**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

THOMAS ROGER VAN GILDER,    )
                                    )
            **Plaintiff,**        )
                                    )
       **v.**               )     **Civil Action No. 12-1037**
                                    )     **Judge Arthur J. Schwab**
CAROLYN W. COLVIN, ACTING   )     **Magistrate Judge Lisa Pupo Lenihan**
COMMISSIONER OF SOCIAL      )
SECURITY,                   )
                                    )
           **Defendant.**      )

## REPORT AND RECOMMENDATION

## I.    Introduction

Plaintiff Thomas Roger Van Gilder ("Van Gilder") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 10 & 14. For the reasons that follow, it is respectfully recommended that Van Gilder's motion for summary judgment (*ECF No. 10*) be denied, that the Commissioner's motion for summary judgment (*ECF No. 14*) be granted, and that the Commissioner's decision be affirmed.

## II.    Procedural History

Van Gilder initially applied for SSI benefits on January 18, 2005, alleging that he had become "disabled" on January 1, 2005. R. at 49. After the application was denied by Pennsylvania's Bureau of Disability Determination ("Bureau"), Van Gilder requested an

1

administrative hearing.  R. at 49.  On August 23, 2006, a hearing was held in Grove City, Pennsylvania, before Administrative Law Judge Michael F. Colligan.  R. at 49.  In a decision rendered on December 13, 2006, Judge Colligan determined that Van Gilder was statutorily "disabled."  R. at 46-54.  Accordingly, SSI benefits were awarded to Van Gilder.  R. at 54.

In April 2007, Van Gilder was incarcerated for delivering a controlled substance.  R. at 32-33.  His SSI benefits ceased as a result of his incarceration.  20 C.F.R. § 416.211.  He remained in prison until July 2009.  R. at 32.

Van Gilder protectively filed a new application for SSI benefits on September 1, 2009. R. at 142, 149, 184.  The Bureau denied the application on January 13, 2010.  R. at 67.  Van Gilder responded on January 27, 2010, by filing a timely request for an administrative hearing. R. at 72-74.  On December 2, 2010, the requested hearing was conducted in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") Douglas Cohen.  R. at 21.  Van Gilder, who was represented by counsel, appeared and testified at the hearing.  R. at 24-42.  George J. Starosta ("Starosta"), an impartial vocational expert, also testified at the hearing.  R. at 42-44.  In a decision dated December 17, 2010, the ALJ determined that Van Gilder was not "disabled" within the meaning of the Act.  R. at 6-17.

On January 21, 2011, Van Gilder sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council.  R. at 5.  The Appeals Council denied the request for review on June 25, 2012, thereby making the ALJ's decision the final decision of the Commissioner in this case.  R. at 1.  Van Gilder commenced this action on July 25, 2012, seeking judicial review of the Commissioner's decision.  ECF Nos. 1 & 2.  Van Gilder and the Commissioner filed motions for summary judgment on November 5, 2012, and January 4, 2013,

respectively. ECF Nos. 10 & 14. These motions are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

## III.  **Standard of Review**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777

(3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is

> determined not to be disabled. If the claimant survives the fourth stage, the fifth,
> and final, step requires the SSA to consider so-called "vocational factors" (the
> claimant's age, education, and past work experience), and to determine whether
> the claimant is capable of performing other jobs existing in significant numbers in
> the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law. That rule is to the effect that a reviewing court, in dealing
> with a determination or judgment which an administrative agency alone is
> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency. If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis. To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.    The ALJ's Decision

In his decision, the ALJ determined that Van Gilder had not engaged in substantial gainful activity subsequent to the date of his application. R. at 11. Van Gilder was found to be

suffering from generalized anxiety disorder, attention deficit disorder, bipolar disorder, post-traumatic stress disorder, and fractures of his left ankle and right forearm. R. at 11. Since the limitations resulting from the fracture of his right forearm were not expected to last for twelve months, that impairment was deemed to be "non-severe." R. at 11; 20 C.F.R. § 416.922. His remaining impairments were deemed to be "severe" under the Commissioner's regulations. R. at 11; 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Van Gilder's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 11-13. In accordance with 20 C.F.R. § 416.945, the ALJ assessed Van Gilder's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he is limited to only occasional climbing (ramps/stairs only), balancing, stooping, crouching, crawling or kneeling; limited to simple, routine, repetitive tasks, not performed in a fast-paced work environment, involving only simple, work-related decisions, and in general, relatively few work place changes; limited to occupations not involving high levels of stress, i.e. requiring no independent decision making; he must avoid contact with the general public and can tolerate no more than superficial interaction with supervisors or coworkers.

R. at 13. Van Gilder had no "past relevant work"[2] experience. R. at 16.

Van Gilder was born on November 29, 1974, making him thirty-four years old on the date of his application and thirty-six years old on the date of the ALJ's decision. R. at 16, 142. He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

416.963(c).  He had the equivalent of a high school education[3] and an ability to communicate in English.  R. at 24, 195; 20 C.F.R. § 416.964(b)(4)-(5).  Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Van Gilder could work as a cleaner, linen folder or laundry worker.  R. at 17.  Starosta's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[4]  R. at 43.

## V.  <u>Discussion</u>

Van Gilder was found to be "disabled" as of January 1, 2005.  R. at 54.  A decision to terminate the payment of SSI benefits to a recipient must ordinarily be based on evidence that his or her medical condition has improved to a sufficient degree to permit the performance of substantial gainful activity.  *Hagans v. Commissioner of Social Security*, 694 F.3d 287, 308 (3d Cir. 2012); 20 C.F.R. §§ 416.988-416.994a.  Under Title XVI, however, benefits may not be paid to an individual who is an "inmate of a public institution."  *Schweiker v. Wilson*, 450 U.S. 221, 224, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); 42 U.S.C. § 1382(e)(1)(A).  The Commissioner's regulations provide for the "suspension" of benefits provided to an individual who becomes a "resident of a public institution."  20 C.F.R. § 416.1325(a).  A "suspension" does not necessarily render an individual ineligible for payments, which may resume after his or her release.  20 C.F.R. § 416.1325(b).  Nonetheless, a "suspension" lasting for more than twelve months results in the "termination" of a recipient's "eligibility for benefits."  20 C.F.R. § 416.1335.  Van Gilder was incarcerated for more than two years.  R. at 32.  Given the length of his confinement, his "eligibility for benefits" was "terminated" by operation of law.  20 C.F.R. § 416.1335.

---

[3] Van Gilder obtained his General Educational Development ("GED") certification in 1993.  R. at 24, 195.
[4] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

Consequently, Van Gilder's new application for benefits is governed by the usual standard for obtaining SSI benefits rather than by the "medical improvement" standard applicable to termination proceedings. *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1308-1309 (D.Kan. 2007).

The initial decision awarding benefits to Van Gilder was partially based on the results of a consultative psychological evaluation performed by Dr. William J. Fernan on March 17, 2006. R. at 52, 548-557. Based on the findings of his evaluation, Dr. Fernan reported that Van Gilder could not relate to co-workers, deal with members of the general public, deal with work-related stress, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, or understand, remember and carry out detailed or complex job instructions. R. at 556-557. It was determined that Van Gilder had borderline intellectual functioning. R. at 553. Referring to his "low level of intellectual functioning," Dr. Fernan described Van Gilder's prognosis as "[e]xtremely poor." R. at 554. Judge Colligan relied on Dr. Fernan's findings in determining that Van Gilder was "disabled." R. at 52.

Van Gilder's benefits were terminated because of a period of incarceration exceeding twelve months. R. at 32; 20 C.F.R. § 416.1335. He was released from prison in July 2009. R. at 32. His new application for SSI benefits was filed on September 1, 2009. R. at 142, 149, 184. The ALJ's decision denying that application was rendered on December 17, 2010. R. at 6-17. SSI benefits are not available for the period of time preceding a claimant's application. 20 C.F.R. § 416.335. For this reason, the period of time relevant to this case is the roughly sixteen-month period falling between the date of Van Gilder's application and the date of the ALJ's decision. The documentary record contains several assessments relating to that period of time.

Martha McMichael ("McMichael"), a non-examining medical consultant, opined on January 12, 2010, that Van Gilder was physically capable of performing a range of "light"[5] work activities involving only occasional postural maneuvers. R. at 60-65. The ALJ accounted for the limitations described in McMichael's consultative report by restricting Van Gilder to "light" work activities involving only occasional climbing, balancing, stooping, crouching, crawling or kneeling. R. at 13. Van Gilder does not appear to challenge any of the ALJ's findings relating to physical limitations. ECF No. 11. Therefore, the relevant inquiry concerns only the ALJ's evaluation of Van Gilder's mental limitations.

Dr. Sharon Becker Tarter reviewed Van Gilder's medical records in order to determine whether he was statutorily "disabled." Based on her review of the documentary evidence, Dr. Tarter asserted that Van Gilder was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." R. at 458. In the narrative portion of her report, Dr. Tarter stated as follows:

> The claimant's ability to understand and remember complex or detailed instructions is limited, however, [sic] he would be expected to understand and remember simple one and two step instructions. He is capable of working within a work schedule and at a consistent pace. He could be expected to complete a normal workweek without exacerbation of psychological symptoms. He is capable of asking simple questions and accepting instruction. Moreover, he can sustain an ordinary routine and adapt to routine changes without special supervision. He retains the ability to perform repetitive work activities without constant supervision.

R. at 458. Van Gilder's subjective complaints were deemed to be only "partially credible." R. at 458.

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Van Gilder sought treatment from Dr. Gerard Francis, a psychiatrist, during the relevant period of time.  R. at 488-507.  On May 4, 2010, Dr. Francis completed a statement detailing Van Gilder's functional abilities and limitations.  R. at 508-510.  In his statement, Dr. Francis reported that Van Gilder's mental impairment did not affect his abilities to understand, remember and carry out instructions.  R. at 508.  Van Gilder was deemed to be "moderately" limited in his abilities to perform activities within a schedule, respond appropriately to changes in a routine work setting, and interact appropriately with co-workers, supervisors, and members of the general public.  R. at 509.  Dr. Francis indicated that Van Gilder had "marked" limitations in his abilities to maintain regular attention, be punctual, and maintain attention and concentration for extended periods of time.  R. at 509.  Only "slight" limitations were identified with respect to Van Gilder's abilities to complete a normal workday without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  R. at 509.  Dr. Francis assigned Van Gilder a Global Assessment of Functioning ("GAF") score of fifty.[6]  R. at 508.

Dr. Martin Meyer and Dr. Julie Uran performed a consultative psychological evaluation of Van Gilder in connection with his application for SSI benefits.  R. at 511-519.  They summarized the results of their evaluation by stating as follows:

> Thomas Van Gilder was referred for a psychological evaluation.  Referral was through the Office of Medical Assistance.  Thomas presents with a history of anti-social behaviors, substance abuse and poor personality adjustment.  Additionally, he reports physical-based limitations.  No recent employment is noted relating to incarcerations as well as "difficulty understanding directions."

---

[6] "The Global Assessment of Functioning ('GAF') scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's [level of] psychological, social and occupational function[ing]." *Taliaferro v. Astrue*, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011).  A GAF score falling between forty-one and fifty is *sometimes* indicative of an individual exhibiting "serious impairment in social, occupational, or school functioning."  American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34.  An individual with a GAF score in this range *may* be "unable to keep a job."  *Id.*

> Current levels of personality adjustment are poor. Prognosis is poor for
> higher levels of personality integration. Within vocational environments, he
> would have difficulties in terms of understanding and carrying out directions as
> well as involving perseverance and pace. His interpersonal skills are poor
> involving difficulties with accurately interpreting events of the external
> environment, significant distrust of others and paranoia. He has had a poor work
> history with no real sustained employment.

R. at 515, 518. Dr. Meyer and Dr. Uran gave Van Gilder a GAF rating of forty-five. R. at 519.

At the hearing, Van Gilder testified that he had started to take online "healthcare" classes through the University of Phoenix in January 2010, but that he had been forced to drop out of the program because of a lack of funding and an inability to continue performing. R. at 26, 30. When questioned by the ALJ about his grades, Van Gilder stated that he had received "B's" and "C's" before withdrawing from the program. R. at 27. Van Gilder further explained that, in October 2010, he had enrolled in English and mathematics courses offered through the Colorado Technical University. R. at 30. He asserted that, at the time of the hearing, he had a "D" in one course and an "F" in the other. R. at 30. A treatment note written by Dr. Francis on June 20, 2010, stated that Van Gilder was spending roughly six hours per day on work related to his online courses. R. at 528.

Van Gilder testified that he did not like being around large groups of people. R. at 37. He described instances in which he had gone to his bedroom in order to avoid contact with guests invited by his live-in girlfriend. R. at 37. Van Gilder explained that he would sometimes experience panic attacks while walking through a grocery store or riding on a crowded bus. R. at 37-38. He stated that he had lost weight during his period of incarceration because of a reluctance to leave his prison cell in order to eat. R. at 38-39. Van Gilder attributed his post-traumatic stress disorder to the fact that he had been involved in multiple car accidents and seen his mother commit suicide. R. at 37.

The ALJ purported to reject the portion of Dr. Francis' assessment finding "marked" limitations in Van Gilder's abilities to maintain regular attention, be punctual, and maintain attention and concentration for extended periods of time. R. at 15. The remaining portions of Dr. Francis' assessment were accorded "great weight." R. at 15. The ALJ afforded "little weight" to the examination report submitted by Dr. Meyer and Dr. Uran. R. at 16. The opinions expressed by Dr. Fernan and Dr. Tarter were not addressed by the ALJ.

In order to facilitate the judicial review authorized by the Act, an administrative law judge must adequately explain his or her reasons for declining to credit "pertinent evidence" which favors a claimant's position. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 121 (3d Cir. 2000). This duty of explanation does not extend to evidence that is irrelevant or otherwise lacking in probative value. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008). Evidence is relevant to a claimant's case only if it sheds light on his or her condition during the period of time in question. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1381-1382 (Fed.Cir. 2009); *Pollard v. Halter*, 377 F.3d 183, 193-194 (2d Cir. 2004); *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990); *Smith v. Bowen*, 849 F.2d 1222, 1225-1226 (9th Cir. 1988); *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).

Van Gilder argues that the ALJ erred in failing to discuss the findings of Dr. Fernan's consultative evaluation. ECF No. 11 at 5-7. That evaluation, however, was performed three and a half years prior to the date of Van Gilder's second application for benefits. R. at 548-557. It related to the period of time in which SSI benefits were paid to Van Gilder. R. at 46-54. The ALJ's decision relating to Van Gilder's second application was based on "more recent evidence" that did not reveal the existence of disabling symptoms.[7] R. at 14. Because Dr. Fernan's report

---

[7] The sentence in the ALJ's decision distinguishing the evidence supporting the existence of Van Gilder's earlier "disability" from the "more recent evidence" that "d[id] not reflect ongoing symptoms of a disabling severity"

was too far removed from the date of Van Gilder's second application to be probative of his mental condition as of that date, the ALJ was not required to discuss it.[8] *Johnson*, 529 F.3d at 203-205.

The second step of the sequential evaluation process has been characterized as "a *de minimis* screening device" designed to quickly "dispose of groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003). For this reason, the invocation of the second step *as a basis for the denial of benefits* is "certain to raise a judicial eyebrow." *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 361 (3d Cir. 2004). Van Gilder maintains that the ALJ erred in failing to characterize his borderline intellectual functioning as a "severe" impairment. ECF No. 11 at 7-9. When he filed his second application for benefits, however, Van Gilder did not list "borderline intellectual functioning" among the impairments limiting his ability to work.[9] R. at 189. His argument concerning that alleged impairment is premised solely on Dr. Fernan's examination report, which predated the relevant period of time by three and a half years. ECF No. 11 at 7-9. It is worth noting that the earlier decision awarding benefits to Van Gilder did not list "borderline intellectual functioning" as one of his "severe" impairments. R. at 51-52. In any event, five "severe" impairments were specifically identified in the decision presently under review. R. at 11. Van Gilder's case proceeded through all five steps of the sequential evaluation process. R. at 11-17. Therefore, the

provided an adequate explanation as to why Dr. Fernan's report was not discussed. *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)(remarking that "a sentence or short paragraph" may sometimes provide a clear explanation for the rejection of evidence). Van Gilder's argument to the contrary is without merit. ECF No. 17 at 2-4. Although this Court cannot conduct an independent analysis of the evidentiary record to rectify errors made by the ALJ, it can explain why the ALJ was not required to specifically address irrelevant evidence. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 204 (3d Cir. 2008).

[8] At the hearing, the ALJ specifically pointed out that only the evidence reflecting Van Gilder's condition on or after September 1, 2009, was relevant to this case. R. at 34.

[9] The extent to which a claimant relies on a given impairment as a basis for seeking benefits is a factor that must be considered for the purpose of determining whether the Commissioner is required to specifically address that impairment. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504 (3d Cir. 2009).

ALJ's failure to recognize "borderline intellectual functioning" as a "severe" impairment was inconsequential. *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).

Under the Commissioner's regulations, the assessment of a claimant's residual functional capacity must account for all of his or her functional limitations, including those resulting from impairments that are not "severe." 20 C.F.R. § 416.945(a)(2). Relying on Dr. Fernan's report, Van Gilder contends that his "extremely limited intellectual functioning" has left him with "poor reading and math skills." ECF No. 11 at 8. He goes on to assert that the ALJ failed to account for these limitations. *Id.* at 8-9. As the ALJ noted, Van Gilder was able to maintain "B's" and "C's" in online college courses after his release from prison. R. at 15, 27. He was enrolled in those courses for ten months. R. at 30. His academic performance apparently worsened after he transferred from the University of Phoenix to the Colorado Technical University. R. at 30. At a minimum, however, Van Gilder had the equivalent of a high school education. R. at 24, 195. An individual with that level of education is presumed to be capable of performing "semi-skilled"[10] or "skilled"[11] work. 20 C.F.R. § 416.964(b)(4). Starosta described the positions later relied upon to deny Van Gilder's application for benefits as "unskilled"[12] jobs. R. at 43. Even

---

[10] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[11] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[12] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can

14

an individual with a "marginal"[13] education can perform "unskilled" work. 20 C.F.R. §
416.964(b)(2). By explicitly relying on Van Gilder's performance in college courses as a basis
for denying his application for benefits, the ALJ implicitly rejected any contention that Van
Gilder's literary and mathematical skills were sufficiently poor to prevent him from working as a
cleaner, linen folder or laundry worker. *Johnson*, 529 F.3d at 204-206.

On November 4, 2009, Dr. Harshad Patel assigned Van Gilder a GAF score of sixty-
three.[14] R. at 397. Dr. Agnieszka E. Gauthier, who apparently took over Dr. Francis' practice,
gave Van Gilder a GAF rating of sixty[15] on October 21, 2010. R. at 560. Although the ALJ
made reference to these GAF scores in his decision, he did not specifically mention the GAF
scores of fifty and forty-five given to Van Gilder by Dr. Francis, Dr. Meyer and Dr. Uran. R. at
15. Van Gilder maintains that the ALJ impermissibly cherry-picked the highest GAF ratings
while ignoring the lower ones. ECF No. 11 at 9-11.

Although GAF scores may be "useful in tracking a patient's progress in global terms,"
they do not necessarily correlate with his or her ability to perform specific work-related tasks.
*Chanbunmy v. Astrue*, 560 F.Supp.2d 371, 383 (E.D.Pa. 2008). The omission of a GAF rating
from an administrative decision does not warrant a remand for further proceedings if the
administrative law judge discusses the alleged or established functional limitations reflected by
that rating. *Bracciodieta-Nelson v. Commissioner of Social Security*, 782 F.Supp.2d 152, 165

---

usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person
does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[13] An individual with formal schooling at or below the level of a sixth-grader is deemed to have a "marginal"
education. 20 C.F.R. § 416.964(b)(2). Van Gilder does not claim to be "illiterate." R. at 188; 20 C.F.R. §
416.964(b)(1).

[14] A GAF score falling between sixty-one and seventy is indicative of an individual exhibiting only "mild
symptoms." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-
TR")(4th ed. 2000), at 34.

[15] A GAF rating falling between fifty-one and sixty *may* be indicative of an individual who exhibits "moderate
difficulty in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and
Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in
this range *may* experience "conflicts with peers or co-workers." *Id.*

(W.D.Pa. 2011). The GAF scores provided by Dr. Francis, Dr. Meyer and Dr. Uran were recorded in reports containing more specific descriptions of Van Gilder's work-related abilities and limitations. R. at 508-519. The ALJ properly focused on those abilities and limitations, which were central to the issues in the case, rather than on the GAF scores, which were not significantly probative of Van Gilder's ability (or inability) to work. R. at 15-16; *Davis v. Astrue*, 830 F.Supp.2d 32, 46 (W.D.Pa. 2011) (recognizing that GAF scores falling between forty-five and fifty do not necessarily indicate that a claimant is "disabled"). Dr. Patel and Dr. Gauthier never detailed Van Gilder's limitations on a function-by-function basis. With respect to those psychiatrists, the ALJ had only the GAF scores to consider. *Bracciodieta-Nelson*, 782 F.Supp.2d at 165. The ALJ had no reason to discuss the GAF ratings assigned to Van Gilder by Dr. Francis, Dr. Meyer and Dr. Uran, since those ratings were overshadowed by more specific assessments describing Van Gilder's work-related capabilities and restrictions. By considering the assessments completed by Dr. Francis, Dr. Meyer and Dr. Uran, the ALJ necessarily considered any alleged limitations reflected by the GAF scores listed in those assessments. *Rutherford v. Barnhart*, 399 F.3d 546, 552-553 (3d Cir. 2005).

Van Gilder's remaining arguments center on the ALJ's evaluation of the assessment provided by Dr. Francis and the consultative report prepared by Dr. Meyer and Dr. Uran. ECF No. 11 at 11-17. After completing their evaluation, Dr. Meyer and Dr. Uran predicted that Van Gilder "would have difficulties in terms of understanding and carrying out directions." R. at 515, 518. Based on an ongoing treatment relationship, Dr. Francis reported that Van Gilder's impairments did not affect his abilities to understand, remember and carry out instructions. R. at 508. The ALJ accorded "great weight" to the relevant portion of Dr. Francis' assessment and "little weight" to the opinion expressed by Dr. Meyer and Dr. Uran. R. at 15-16.

Where the evidence is in conflict, an administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). That is particularly true in this instance, since Dr. Francis was a *treating* psychiatrist who had observed Van Gilder's behavior over an extended period of time. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); 20 C.F.R. § 416.927(c)(2). Furthermore, the ALJ "did not merely rubber stamp" the portions of Dr. Francis' assessment that were unfavorable to Van Gilder. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011). Although Dr. Francis had indicated that Van Gilder's impairments would not impact his abilities to understand, remember and carry out *detailed* instructions, the ALJ found Van Gilder to be "limited to simple, routine, repetitive tasks . . . involving only simple[] work-related decisions." R. at 13, 508. By incorporating these limitations within his residual functional capacity assessment, the ALJ partially credited the view expressed by Dr. Meyer and Dr. Uran concerning the "difficulties" that Van Gilder would experience in "understanding and carrying out directions." R. at 515, 518.

Dr. Meyer and Dr. Uran predicted that Van Gilder would not be able to maintain his "perseverance and pace" if he were to be placed in a vocational environment. R. at 515, 518. Dr. Francis indicated that Van Gilder had "marked" limitations in his abilities to maintain regular attention, be punctual, and maintain attention and concentration for extended periods of time. R. at 509. The ALJ addressed those concerns by restricting Van Gilder to a range of work that was "not performed in a fast-paced work environment." R. at 13. Starosta testified that no jobs existed in the national economy for an individual who would frequently be off-task for more than ten percent of a standard workday.[16] R. at 43-44. Van Gilder apparently believes that the

---

[16] The inquiry required under the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117]. *Cleveland v.*

accommodation provided by the ALJ was not sufficient to account for his limitations, and that Starosta's testimony necessitated a finding that he was statutorily "disabled." ECF No. 11 at 11-17.

Although Dr. Francis identified "marked" limitations relating to Van Gilder's attention, concentration and punctuality, he reported that Van Gilder was only "slightly" limited in his abilities to complete a normal workday without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. R. at 509. The ALJ addressed this ambiguity by rejecting the "marked" limitations and giving "great weight" to the remaining portions of Dr. Francis' assessment. R. at 15. If the portion of Dr. Francis' assessment declaring Van Gilder to be "markedly" limited in the relevant areas is construed to mean that he *could not* complete a normal workday or perform at a consistent pace, the assessment as a whole becomes "internally contradictory." *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Dr. Francis apparently believed that Van Gilder would have difficulty maintaining the attention and punctuality required to perform tasks involving a high level of concentration, but that he would not need an inordinate amount of time to rest while performing tasks involving a low level of concentration. R. at 509. Despite his "rejection" of the "marked" limitations, the ALJ generally accommodated them by restricting Van Gilder to a range of "simple, routine, repetitive" work that was "not performed in a fast-paced work environment," that did not involve "high levels of stress," and that did not require independent decisionmaking. R. at 13, 15.

The ALJ's residual functional capacity assessment constitutes a reasonable interpretation of the opinion evidence. An individual who is "markedly" limited in his or her ability to engage

*Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).

18

in a particular activity is not absolutely precluded from engaging in that activity. *Hansford v. Astrue*, 805 F.Supp.2d 140, 146, n. 5 (W.D.Pa. 2011). Indeed, this understanding of the term "marked limitation" was expressed on the assessment form completed by Dr. Francis. R. at 508. By declining to find "extreme" limitations pertaining to Van Gilder's attention, concentration and punctuality, Dr. Francis acknowledged that Van Gilder had some ability to function in those areas. R. at 508-509. When that acknowledgement is viewed in relation to Dr. Francis' assertion that Van Gilder could complete a normal workday and perform at a consistent pace, it becomes apparent that the ALJ's factual findings are not in tension with Dr. Francis' assessment. R. at 509.

Van Gilder testified that he had received "B's" and "C's" in online college classes over the course of ten months. R. at 27, 30. A treatment note provided by Dr. Francis stated that Van Gilder had been spending roughly six hours per day on his academic pursuits. R. at 528. In light of the fact that Van Gilder was able to handle academic work at the collegiate level, it was reasonable for the ALJ to infer that Van Gilder's mental impairments would not prevent him from performing "unskilled" work. R. at 15. This conclusion is not undermined by the fact that Van Gilder encountered academic difficulties after transferring to the Colorado Technical University. R. at 30. As discussed earlier, "unskilled" work can be performed by someone with only a "marginal" education. 20 C.F.R. § 416.964(b)(2). Since the record supports the ALJ's finding that Van Gilder could perform at the pace necessary to maintain an "unskilled" job, the portion of Starosta's testimony referring to an individual who could not perform at such a pace did not preclude a determination that jobs consistent with Van Gilder's abilities and limitations existed in the national economy. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987).

An administrative law judge must give "serious consideration" to a claimant's subjective complaints whenever the record contains objective evidence of an impairment that could reasonably be expected to cause the symptoms described in the claimant's testimony. *Mason v. Shalala*, 994 F.3d 1058, 1067-1068 (3d Cir. 1993). At the hearing, Van Gilder described difficulties that he had encountered while interacting with others. R. at 37-40. This testimony was seriously considered by the ALJ, who limited Van Gilder to jobs involving no contact with members of the general public and only "superficial interaction" with supervisors and co-workers. R. at 13. These restrictions went beyond those identified by Dr. Francis, who found Van Gilder to be only "moderately" limited in his ability to interact appropriately with supervisors, co-workers, and members of the general public. R. at 509. Dr. Francis also reported that Van Gilder was "moderately" limited in his ability to respond appropriately to changes in a routine work setting. R. at 509. The ALJ accounted for that limitation by restricting Van Gilder to a range of work involving relatively few workplace changes. R. at 13. Since the ALJ's residual functional capacity assessment is "supported by substantial evidence," it is "conclusive" for purposes of this case. 42 U.S.C. § 405(g). Every functional limitation contained within that assessment was conveyed to Starosta at the hearing. R. at 42-43. Hence, Starosta's testimony satisfied the Commissioner's burden of production at the fifth step of the sequential evaluation process. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

## VI.    Conclusion

The Commissioner's decision denying Van Gilder's application for SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Accordingly, it is respectfully recommended that Van Gilder's motion for summary judgment (*ECF No. 10*) be denied, and that the Commissioner's motion for summary judgment (*ECF No. 14*) be granted. It is further

recommended that the Commissioner's final decision be affirmed. In accordance with 28 U.S.C.

§ 636(b)(1), the parties have fourteen days to file written objections to this report and

recommendation. A party's failure to file written objections will seriously impair his or her

ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d

187, 193, n. 7 (3d Cir. 2011).

Dated: April 16, 2013

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc:     All counsel of record